AO 106 (Rev. 04/10) Application for a Search Warrant

AUTHORIZED AND APPROVED DATE _____ 12/14/22

# UNITED STATES DISTRICT COURT
### for the
### Western District of Oklahoma

FILED
DEC 14 2022
CARMELITA REEDER SHINN, CLERK
U.S. DIST. COURT, WESTERN DIST. OKLA
BY _____ DEPUTY

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>INFORMATION ASSOCIATED WITH LIFE360 ACCOUNT ASSOCIATED WITH THE EMAIL<br>ADDRESS OF BAPTISTEMELISSA800@YAHOO.COM THAT IS STORED AT PRESMISES<br>CONTROLLED BY LIFE360, INC | )<br>)<br>)<br>)<br>)<br>) Case No. M-22- 929 -AMG<br>) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

**See Attachment A**

located in the     **Western**     District of     **Oklahoma**     , there is now concealed *(identify the person or describe the property to be seized)*:

**See Attachment B**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

    ☑ evidence of a crime;

    ☐ contraband, fruits of crime, or other items illegally possessed;

    ☐ property designed for use, intended for use, or used in committing a crime;

    ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Distribution/Possession with Intent to Distribute Controlled Substances |

The application is based on these facts:

**See attached Affidavit**

    ☑ Continued on the attached sheet.

    ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested
       under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

**Robin Melodick, Special Agent, DEA**
*Printed name and title*

Sworn to before me and signed in my presence.

Date:    12/14/22

*Judge's signature*

City and state:   Oklahoma City, Oklahoma

**AMANDA MAXFIELD GREEN, U.S. MAGISTRATE JUDGE**
*Printed name and title*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF OKLAHOMA

IN THE MATTER OF THE SEARCH
OF INFORMATION ASSOCIATED
WITH LIFE360 ACCOUNT
ASSOCIATED WITH THE EMAIL       Case No. M-22-        -AMG
ADDRESS OF
BAPTISTEMELISSA80@YAHOO.COM
THAT IS STORED AT PRESMISES
CONTROLLED BY LIFE360, INC.

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, DEA Special Agent Robin Melodick, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for information that is associated with the Life360 account associated with the email address baptistemelissa80@yahoo.com (the "**TARGET ACCOUNT**"). This information is stored at premises controlled by Life360, Inc. (the "**PROVIDER**"), an electronic communications services provider and/or remote computing services provider, which is headquartered at / which accepts service at 539 Bryant Street, Suite 402, San Francisco, CA 94107.

2.      The information to be searched is described in the following

paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A) to require **PROVIDER** to disclose to the government copies of the information (including the contents of communications) further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

3.     I am a Special Agent (SA) of the Drug Enforcement Administration (DEA). As such, I am "an investigative or law enforcement officer of the United States" within the meaning of Section 2510(7) of Title 18, United States Code; that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, the offenses enumerated in Title 18, United States Code, Section 2516. I have been a SA with DEA for approximately 18 years, and I have worked numerous conspiracy investigations, including Title III wire cases, and complex, multi-jurisdictional investigations. I am well versed in a multitude of investigative methods, including working confidential sources, interviews, arrests, search warrants, seizure warrants, and analyzing cellular phone data.

4.     The facts set forth in this affidavit are based upon my personal observations, my training and experience, reports provided to me by other law enforcement officers, and statements made by witnesses and other concerned

2

parties. Since this Affidavit is being submitted for the limited purpose of establishing probable cause for the requested warrant, I have not included each and every fact known to me concerning this investigation.

5.　　Based on the facts set forth in this Affidavit, there is probable cause to believe that violations of 21 U.S.C. § 841 have been committed which lead to the death of J.S. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses.

## JURISDICTION

6.　　This Court has jurisdiction to issue the requested warrant because it is a "court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), and (c)(1)(A). Specifically, the Court is a "district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i). As discussed more fully below, acts in furtherance of the offenses under investigation occurred within the Western District of Oklahoma.

## PROBABLE CAUSE

7.　　On October 11, 2022, I received information from a family member of J.S. that J.S. passed away during the early morning hours of October 9, 2022, from a suspected fentanyl overdose. Based on that information, I contacted Melissa Baptiste, the mother of J.S., via telephone. During the phone call, I gleaned basic information related to the circumstances surrounding the death of J.S. Based on

3

the information collected from Baptiste, I planned to meet Baptiste and other family members at 13601 Brangus Road, Shawnee, Pottawatomie County, Oklahoma, the residence of Baptiste and J.S., on the following day.

8.      On October 12, 2022, at approximately 10:00 a.m., I met with Baptiste, as well as other family members and close friends of J.S., to conduct interviews and gather further information regarding J.S.'s death.  During the course of this interview, I learned that J.S. had previously overdosed on fentanyl and was revived with Narcan approximately three weeks before his death. Information learned during these interviews, as well as subsequent interviews, indicated that J.S. has purchased and used counterfeit Oxycodone pills that were laced with fentanyl in the past.

9.      In addition to information concerning J.S.'s past fentanyl use, the interviews on October 12, 2022, also revealed that J.S. had been at home with his brother and sister (minors) during the evening hours on October 8, 2022.  During that time, J.S.'s girlfriend (C.S.) was also present and stated J.S. was behaving normally when he walked her out to her car.  C.S. told me she departed J.S.'s residence at approximately 12:30 a.m. on October 9, 2022, in order to make it home by her curfew of 1:00 a.m.  At that time, I observed on C.S.'s cell phone call history that she had attempted to place a FaceTime call to J.S. at approximately 1:00 a.m. but that the call had gone unanswered.

10.     According to J.S.'s brother, after C.S. departed their residence at

4

approximately 12:30 a.m., J.S. walked back into the house and told his brother he was going to the Domino (a food and gas station) to get something. J.S.'s brother told me J.S. returned to the house, rolled a marijuana cigarette and then exited the residence to smoke outside however, J.S.'s brother did not recall what time that had occurred.

11.     According to another friend of the family (Q.L.), who was also present the night of J.S.'s death, told me he was awoken by J.S. who asked for Q.L.'s "nic" (short for nicotine vape). Q.L. told me he was not aware of what time that had happened.

12.     J.S.'s brother told me he never heard J.S. come back in the house after J.S. went outside to smoke. J.S.'s brother stated that at approximately 4:00 a.m. he opened a window to look outside and observed J.S.'s car door open and the interior car lights on, but he could not see Simpson in the front seat. At that time, J.S.'s brother proceeded outside to J.S.'s car and observed J.S. slumped over in the front seat with his head under the dashboard and the family dog in the backseat. J.S.'s brother stated that at that time he immediately ran inside and woke up his sister to call 911. According to dispatch records, 911 was called at 4:16 a.m. from Q.L.'s phone and emergency medical services were on scene at 4:26 a.m.

13.     Call log data received from the Pottawatomie County Dispatch, indicate that the call for emergency services for J.S. was to 13601 Brangus Rd., Shawnee, Oklahoma. This address is located in Pottawatomie County, in the state

of Oklahoma, which is in the Western District of Oklahoma.

14.    During the interview of Baptiste, I further learned Baptiste subscribed to the Life360 application to track J.S.'s phone, which was assigned the call number (405) 510-6228, however, she had the free service that only keeps location history data accessible for a period of 48 hours. At the time of the interview of Baptiste, J.S.'s location history was no longer available on the Life360 application. Baptiste provided me with her username and password for the **TARGET ACCOUNT** and requested I attempt to acquire J.S.'s location history from the **PROVIDER**. I have also received a signed, written consent form authorizing access to the **TARGET ACCOUNT** for the purpose of determining J.S.'s location history.

15.    According to purchase records and video surveillance footage received from the Domino Food and (Shell) Gas Station #127, located at 4503 N. Harrison Ave, Shawnee, Pottawatomie County, Oklahoma, J.S. entered the store alone and made a purchase of Cigarello at 1:10 a.m. on October 9, 2022 (see receipt below). Recorded video surveillance does not appear to show J.S. meeting with anyone in the parking lot of the gas station.

```
                Welcome to Shell
                  12607989006
        SHELL
        4503 N HARRISON AVE
        SHAWNEE        OK  74804

        ( DUPLICATE RECEIPT )
------------------------------------------------
        10/9/2022  1:10:50 AM

Register: 1      Tran Seq No:   10302172
Store No: SHELL              #127, James K

1    GAME CGRLO RED 2/149           $1.49
                                  ----------
                     Sub Total:      $1.49
                          Tax:       $0.00
                        Total:       $1.49
                 Discount Total:     $0.00

                         Cash        $1.15
                       Credit:       $0.34
                     Change$0.00

US DEBIT                     USD$0.34
XXXX XXXX XXXX 8751
Chip Read
APPROVED
AUTH # 662474                INV # 686915

Mode: Issuer
AID: A0000000980840
TVR: 8000108000
IAD: 06011203608000
TSI: 6800
ARC: 00

Customer Copy
```

16.     Information from the **PROVIDER** may provide additional locations traveled by J.S., including possible locations with video surveillance, and additional evidence of the distribution of CDS leading to the death of J.S. Therefore, I am requesting a search warrant for the **PROVIDER** to provide this information, if possible, as well as any other data and information known by the **PROVIDER** for the **TARGET ACCOUNT**, including any location data associated with cellular phone number 405-510-6228, tracking J.S., and identified in the **TARGET ACCOUNT** as "Jeff."

17.     Based on my training, experience, research and interviews; I know

that the telephone used by J.S. had downloaded the application Life360, and that
it was connected to an account utilized by J.S.'s mother.

## BACKGROUND ON LIFE360 ACCOUNTS

18.     Life360 (**PROVIDER**) offers "Advanced Location Sharing" software
that allows members to track and share real-time location information. In
addition, **PROVIDER's** "Private Circle" function can be used to "[s]ync your
family in a private, invite-only Circle to see each other's real time whereabouts"
as well as location history. I am also aware that, according to **PROVIDER's**
website, the Life360 app has "in-app chat" capability as well as "smart
notifications" that alert users about other users' movements. The app further
allows users to "check-in," sending location updates directly to other users.
**PROVIDER's** "Drive Details" function records specific driving routes and
associated information, such as miles logged, top speed, and driving behavior.

19.     **PROVIDER** tracks locations of account holders. According to
**PROVIDER's** website, **PROVIDER** collects and stores user geolocation data,
including data collected through a mobile device's GPS, wi-fi, and Bluetooth
capabilities, and "driving event data," which includes data from a mobile device's
gyroscope, accelerometer, compass, and Bluetooth capabilities.

20.     **PROVIDER** allows its subscribers to access its various devices
through an application that can be installed on and accessed via cellular
telephones and other mobile devices. This application is associated with the

subscriber's Life360 account. In my training and experience, I have learned that when the user of a mobile application installs and launches the application on a device (such as a cellular telephone), the application directs the device in question to obtain a Push Token, a unique identifier that allows the provider associated with the application (such as the Life360 app) to locate the device on which the application is installed. After the applicable push notification service (e.g., Apple Push Notifications (APN) or Google Cloud Messaging) sends a Push Token to the device, the Push Token is then sent to the application, which in turn sends the Push Token to the application's service/provider. Thereafter, whenever the provider needs to send notifications to the user's device, it sends both the Push Token and the payload associated with the notification (i.e., the substance of what needs to be sent by the application to the device). To ensure this process works, Push Tokens associated with a subscriber's account are stored on the provider's server(s).

21. In summary, based on my training and experience in this context, I believe that **PROVIDER**[1] is likely to control Life360-generated information about

---

[1] At times, social media providers such as **PROVIDER** can and do change the details and functionality of the services they offer. While the information in this section is true and accurate to the best of my knowledge and belief, I have not specifically reviewed every detail of **PROVIDER's** services in connection with submitting this application for a search warrant. Instead, I rely upon my training and experience, and the training and experience of others, to set forth the foregoing description for the Court.

its subscribers and their use of Life360 services and other online services. In my training and experience, examining location and other data stored by these applications can uncover, among other things, evidence that reveals or suggests the locations traveled by a subject as well as possibly who the subject encountered in the time period prior to being discovered deceased.

22.     An examination of the information request may reveal the approximate location of J.S.'s cell phone. Identifying these locations can be used to compel material records from necessary entities, including video footage, additional cellular telephone records, location data, etc. As explained herein, information stored in connection with a Life360 account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.

## CONCLUSION

23.     Based on the forgoing, I request that the Court issue the proposed search warrant. Because the warrant will be served on **PROVIDER**, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

24.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

Respectfully submitted,

ROBIN MELODICK
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me on December ___14th___, 2022.

AMANDA MAXFIELD GREEN
United States Magistrate Judge
Western District of Oklahoma

## ATTACHMENT A
## Property to Be Searched

This warrant applies to information which is associated with the Life360 account associated with the email address baptistemelissa80@yahoo.com. This account is the "Target Account."  Information associated with the Target Account is stored at premises owned, maintained, controlled, or operated by Life360, Inc., a company that accepts service of legal process at 539 Bryant Street, Suite 402, San Francisco, CA 94107.

## ATTACHMENT B

### Particular Things to be Seized and Procedures
### to Facilitate Execution of the Warrant

**I.    Information to be disclosed by Life360, Inc. ("PROVIDER") to facilitate execution of the warrant**

To the extent that the information described in Attachment A is within the possession, custody, or control of PROVIDER, including any records that have been deleted but are still available to PROVIDER, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), PROVIDER is required to disclose the following information to the government corresponding to each account or identifier listed in Attachment A:

- For the time period October 5, 2022, at 0001 hours Central Time, to October 9, 2022, at 2359 hours Central Time: all information held by PROVIDER related to the precise geolocation and geolocation history of the user(s) of the Target Account, including IP address and Global Positioning System ("GPS") information and, to the extent known, user-generated names associated with the geographic locations associated with the Account, as that data is collected by PROVIDER in its regular course of business.

Within **14 DAYS** of the issuance of this warrant, PROVIDER shall deliver the information set forth above via United States mail, courier, or e-mail to the following:

Special Agent Robin Melodick at 901 NE 122nd Street, Suite 201, Oklahoma City, OK 73114 or to email address: Robin.L.Melodick@dea.gov

## II.    Information to be seized by the government

All information described above in Section I that constitutes fruits, contraband, evidence and instrumentalities of violations of 21 U.S.C. § 841, which have been committed and led to the death of J.S., as described in the affidavit submitted in support of this Warrant, including, but not limited to records and information concerning:

       a. the identification or location of the user(s) of the Account;

       b. how and when the Account was accessed or used, to determine the geographic and chronological context of Account access, use, and events relating to the Subject Offenses and to the Account user(s); and

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant.  The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.  Pursuant to this warrant, the DEA may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.